UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL CARLSON, et al.,

        Plaintiffs,

  v.                                                               Case No. 06-C-487

JAMES FRANKLIN, et al.,

        Defendants.

**DECISION AND ORDER**

The individual plaintiffs, all of whom are investors in Seismic Sciences, Inc. (SSI), a Nevada corporation engaged in the business of developing technology for gas and oil exploration, brought this action, individually and derivatively on behalf of SSI, for an accounting, and declaratory and injunctive relief against defendants James Franklin and Oil and Gas Technology Fund, Inc. (OGTF). This court's jurisdiction arises under 28 U.S.C. § 1332 based on diversity of citizenship. Following all-day mediation by Magistrate Judge Gorence on January 8, 2007, the parties reached an agreement to settle most of issues involved in the case, which they then supplemented as to the remaining issues on January 26, 2007. The case was then returned to this court in anticipation that the parties would submit a stipulation for dismissal based on their agreement. The defendants refused to sign a final stipulation, however, claiming that a key condition of the agreement, namely, that the plaintiffs turn over all geological survey records relating to a property in Torrence, California, had not been fulfilled. Defendants contend that the records are necessary to enable Franklin to sell the property in question. Plaintiffs deny that they have failed to perform their part of the agreement and have moved for an order to enforce the settlement agreed to by the parties.

As noted, the defendants now state that the records produced by the plaintiffs were not sufficient. Specifically, instead of producing some four or five boxes of geological records – including documents known as "well logs," "mud logs" or "duel induction logs" – the plaintiffs produced only one. Thus, defendants urge that the settlement agreement should not be enforced because of a unilateral or mutual mistake about the existence of the records in question.

Under Wisconsin law, unilateral mistake is not a basis (absent fraud) for setting aside a contract. *Gielow v. Napiorkowski,* 2003 WI App 249, 673 N.W.2d 351,358 (Wis. Ct. App. 2003). Of course that is not surprising, since contracts would be rendered worthless if one party's own subjective error would justify a do-over. In some circumstances, however, *mutual* mistake may justify setting aside a contract:

> A "compromise" or contract settling a suit may be set aside for mutual mistake of fact. Mutual mistake exists where both parties to a contract are unaware of the existence of a past or present fact material to their agreement. This unawareness or belief, however, must arise from a lack of knowledge of the possibility that the fact may or may not exist. If there was conscious doubt or uncertainty on the part of the parties as to the existence or nonexistence of a fact or situation, and the parties reached an agreement under such circumstances, it is considered that it was their intention and contemplation to accept and compromise the consequences of the doubt and uncertainty, and they would not then be acting under mutual mistake of fact. For a mistake to be mutual, it must involve both parties.

*Id.* at 357-58 (citations omitted).

The defendants' mutual mistake theory assumes (as it must) that both sides to the settlement agreement wrongly believed that the records in question were either in the plaintiffs' possession or could be readily obtained. Now that it is clear that these records are missing, the defendants argue that the entire agreement is voided because the agreement's entire purpose (from their perspective) was to obtain the very documents that apparently do not exist. Thus, because defendants would

2

never have entered into the agreement had they known that the documents could not be produced, they believe the mutual mistake is manifest.

It seems the central dispute is over the nature of the documents themselves, that is, *which* documents were to be produced. The plaintiffs turned over every document they had, but the defendants now state that what they really need are various documents described as "well logs," "mud logs" or "duel induction logs". The nature of the documents described in the settlement agreement requires reference to the record memorializing the settlement:

> MR. MILLER: Can I be heard? Just to clarify, I think that we would also need some production records from the oil field just so there's no –
>
> THE COURT: Fine.
>
> MR. MILLER: – Just so there's no disagreement as to – we need the records – sufficient records – geological survey production records. We need sufficient records to be able to sell the oil field, the Torrence oil field.
>
> THE COURT: Okay. And the plaintiffs agree to turn over any and all records relating to that – the geological survey production records in their possession, is that correct, Mr. Burnett?
>
> MR. BURNETT: That is correct.

(Burnett Decl., Ex. 1 at 7-8.)

Later in the hearing, another exchange regarding the requested documents took place:

> MR. MOENCH: Your honor, I want to state for the record that we are entering into this agreement for different reasons, but I think the principal reason is to get back the geological records. Upon – the factual predicate for the agreement is the statement, I believe made by Mr. Burnett, that these records will be turned over, which means that they have possession of them and they can turn them over. This is not a small part of the agreement for us; it is a major point.

3

| | |
|---|---|
| THE COURT: | Okay, and Mr. Burnett has made that representation. Correct, Mr. Burnett? |
| MR. BURNETT: | Your Honor, I – I'm confident that we can acquire the records. I can't say that we have them in our possession right now. And obviously if the records cannot be produced, the balance of the agreement is in jeopardy. |
| THE COURT: | Right, the agreement is in jeopardy, yes. |

(*Id.* at 12.)

Thus, throughout the hearing the records the defendants sought were variously referred to as "geological records," "geological survey production records," or just "production records." Nowhere in the settlement hearing or the written stipulation are the terms "well logs," "mud logs" or "duel induction logs," which are the documents defendants now purportedly seek. The declaration of Daniel Zeise confirms that these documents were never discussed during the mediation. (Zeise Decl., ¶ 20.)

Because these records were never specifically mentioned until now, the plaintiffs suggest that the defendants are engaged in a stalling tactic. This is evidenced by an affidavit from Peter Pochna, whose company sold the Torrence rights to the Oil & Gas Technology Fund (OGTF) in 2004. Pochna indicates that he compiled the missing records at issue here from records *publicly available* in California, which suggests that the defendants' need for the *specific* records they have in mind is not so great. Other affidavits – some filed by people with no personal interest in this lawsuit, others filed by people with distinguished records of public service – suggest that Defendant Franklin, as well as his attorney, are entitled to less than complete deference in terms of the credibility of their protests. All in all, the plaintiffs believe that the defendants' objections are just a ruse to escape the terms of the settlement agreement.

4

Ultimately, however, these are side issues: the defendants' present motives are largely immaterial in evaluating whether a mutual mistake has occurred. Without presuming to understand exactly what is going on beneath the surface of this ongoing dispute, I am convinced that the settlement agreement entered into between the parties was not subject to a mutual mistake about the nature of the records that were to be produced.

As noted earlier, "[m]utual mistake exists where both parties to a contract are unaware of the existence of a past or present fact material to their agreement." *Gielow*, 673 N.W.2d at 358. Here, there is simply no evidence that both parties to the agreement made a mistake about the documents now at issue. The documents defendants now seek were not mentioned during the settlement negotiations, which means there is no indication in the record about what documents the *plaintiffs* believed existed. Instead, the evidence shows that the plaintiffs were not mistaken, they were simply agnostic: they agreed to produce whatever documents they possessed as well as "the" geological records they could obtain. They never made a commitment to produce any specific document apart from "geological records," and there is thus no evidence that they made a "mistake" about what documents existed. Because there was "conscious doubt or uncertainty" on the part of the plaintiffs, there is no mutual mistake. *Id.*

At most, the defendants have persuaded me that their own subjective expectation was that four or five boxes of documents would be turned over, including the logs at issue now. But that was not made explicit in the agreement, and thus the defendants have shown only a *unilateral* mistake on their part. If the defendants had a specific demand, they should have clarified that during the negotiations – after all, the entire purpose of negotiated contracts is to clarify expectations and avoid reliance on either side's subjective, hidden hopes. In sum, if a mistake occurred as to what

5

documents were available, that mistake was one-sided. Because there is no evidence that the plaintiffs believed the specific logs now sought could be located, there is no evidence of *mutual* mistake that would justify relief.

Finally, the defendants protest that there is a failure of consideration. Because the documents were theirs to begin with, they assert, the plaintiffs were already under a legal obligation to turn them over. And "it is axiomatic that doing what you have a legal responsibility to do is not consideration." (Def. Br. at 7.) Under the defendants' theory, then, the entire negotiation (which they point out was extensive) was simply a ruse because the primary benefit they sought – the records – was theirs to begin with. (Strangely, it follows from this argument that the defendants never intended to perform their obligations in the first place.) Putting that to one side, it is clear that the documents were part and parcel of a larger settlement of all the issues between the parties. Thus, consideration existed because each side received something from the transaction – the defendants, in fact, stood to receive a settlement to the lawsuit filed against them.

Accordingly, **IT IS ORDERED** that the plaintiffs' motion to enforce the settlement agreement is **GRANTED;** James Franklin III and OGTF are ordered to comply with the settlement agreement as set forth on the record on January 8, 2007, and as supplemented on January 26, 2007.

Dated this   9th   day of July, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge